**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and ARTHUR H. BUNTE, JR., as Trustee, | ) | |
| | ) | Case No. 18-cv-8510 |
| *Plaintiffs*, | ) | |
| v. | ) | Judge |
| | ) | |
| HURON AVENUE, L.C., a Michigan limited liability company, | ) | Magistrate Judge |
| | ) | |
| *Defendant*. | ) | |

**COMPLAINT**

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund and Arthur H. Bunte, Jr., one of its present trustees, for a cause of action against Defendant allege as follows:

**JURISDICTION AND VENUE**

1. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq*. This Court has jurisdiction over this action under 29 U.S.C. §§ 1132(e), 1132(f) and 1451(c).

2. Venue lies in this Court under 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the Central States, Southeast and Southwest Areas Pension Fund (the "Fund") is administered at its principal place of business in Rosemont, Illinois.

**PARTIES**

3. The Fund is a multiemployer pension plan within the meaning of 29 U.S.C. §§ 1002(37) and 1301(a)(3).

4. Plaintiff Arthur H. Bunte, Jr., is a present trustee and fiduciary of the Fund within the meaning of 29 U.S.C. § 1002(21)(A), and he and his fellow trustees are the plan sponsor of the Fund within the meaning of 29 U.S.C. § 1301(a)(10). The Trustees administer the Fund in Rosemont, Illinois.

5. Pursuant to 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), the Trustees, by and through their designated trustee Arthur H. Bunte, Jr., are authorized to bring this action on behalf of the Fund, its participants, and its beneficiaries.

6. Defendant Huron Avenue, L.C. is a limited liability company organized under the laws of Michigan.

## FACTUAL BACKGROUND

### I. The Port Huron Building Supply Controlled Group.

7. Non-party Port Huron Building Supply Co. ("Port Huron Building Supply") is a corporation organized under the laws of the State of Michigan.

8. Port Huron Building Supply was previously bound by collective bargaining agreements with certain local unions affiliated with the International Brotherhood of Teamsters under which Port Huron Building Supply was required to contribute to the Fund on behalf of certain of its employees.

9. On December 31, 2012, Michael Lauth directly or indirectly owned at least 80% of the total combined voting power of all classes of outstanding stock entitled to vote or at least 80% of the total value of outstanding shares of all classes of stock of Port Huron Building Supply.

10. In addition, on December 31, 2012, Michael Lauth directly or indirectly owned at least 80% of all membership units of Huron Avenue, L.C. entitled to vote, at least 80% of the total

value of all membership units of Huron Avenue, L.C., and/or at least 80% of the profits interest or capital interest in Huron Avenue, L.C.

11. During each year from 2009 through 2013, Huron Avenue, L.C. received at least $43,000.00 in rents from leasing commercial real estate.

12. On December 31, 2012, Port Huron Building Supply, Huron Avenue, L.C., and all other trades or businesses under common control with Port Huron Building Supply were a group of trades or businesses under common control (the "Port Huron Building Supply Controlled Group") and therefore constituted a single employer within the meaning of 29 U.S.C. § 1301(b)(1) and the regulations promulgated thereunder.

13. The Port Huron Building Supply Controlled Group is the "employer" for purposes of determining and assessing withdrawal liability under MPPAA.

**II. The Withdrawal Liability and the Judgment.**

14. As a result of a decline in Port Huron Building Supply's contributions to the Fund, the Fund determined that on December 31, 2012, the Port Huron Building Supply Controlled Group effected a "partial withdrawal" from the Fund within the meaning of 29 U.S.C. § 1385(a)(1) (the "Partial Withdrawal").

15. As a result of the Partial Withdrawal, the Port Huron Building Supply Controlled Group incurred withdrawal liability to the Fund, jointly and severally, in the principal amount of $2,114,166.93 (the "Withdrawal Liability"), as determined under 29 U.S.C. § 1381(b).

16. On May 21, 2014, the Port Huron Building Supply Controlled Group, through Port Huron Building Supply, received a notice and demand for payment of the Withdrawal Liability that the Fund had issued in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1) (the "Notice and Demand"). In the Notice and Demand, the Fund notified the Port Huron Building Supply

Controlled Group that its total withdrawal liability was $2,114,166.93. Further, in the Notice and Demand, the Fund notified the Port Huron Building Supply Controlled Group that it was required to discharge the Withdrawal Liability either in a lump sum or in monthly installment payments of $10,436.01, beginning on June 1, 2014 and ending on May 1, 2034.

17. During all relevant times, Michael Lauth was Port Huron Building Supply's president.

18. On or about August 14, 2014, Michael Lauth, on behalf of Port Huron Building Supply, sent a letter to the Fund in which he requested review of the Withdrawal Liability pursuant to section 4219(b)(2)(A) of ERISA, 29 U.S.C. 1399(b)(2)(A) (the "Request for Review").

19. On September 11, 2014, the Port Huron Building Supply Controlled Group, through Port Huron Building Supply, received a notice from the Fund pursuant to 29 U.S.C. § 1399(c)(5)(A), in which the Fund advised the Port Huron Building Supply Controlled Group that its withdrawal liability payments were past due and forewarned the Port Huron Building Supply Controlled Group of the consequences of failing to pay its Withdrawal Liability. Specifically, the Fund advised the Port Huron Building Supply Controlled Group that if it did not make its past due Withdrawal Liability payments, the Port Huron Building Supply Controlled Group would fall into default on the Withdrawal Liability, and the Fund would refer the Port Huron Building Supply Controlled Group's account to the Fund's counsel for collection.

20. Subsequently, the Port Huron Building Supply Controlled Group failed to make the required withdrawal liability payments to the Fund and fell into default within the meaning of 29 U.S.C. 1399(c)(5)(A).

21. In addition, the Port Huron Building Supply Controlled Group did not timely initiate arbitration pursuant to 29 U.S.C. § 1401(a)(1).

22. Accordingly, on March 26, 2015, the Fund filed suit against Port Huron Building Supply for the Withdrawal Liability in the United States District Court for the Northern District of Illinois (*Central States, Southeast and Southwest Areas Pension Fund, et al. v. Port Huron Building Supply Co*., No. 15-cv-2559).

23. On March 31, 2016, the District Court entered a judgment against Port Huron Building Supply in the amount of $2,751,654.85 (the "Judgment," 15-cv-2559, N.D. Ill, Dkt No. 39.) The Judgment amount consisted of delinquent Withdrawal Liability, pre-judgment interest, liquidated damages, and attorneys' fees and costs. The Judgment also provided that Port Huron Building Supply was liable for post-judgment interest.

24. The Fund collected some amounts during its post-Judgment collection efforts, but those amounts were all applied to post-Judgment interest.

25. As a result, the full principal amount of the Withdrawal Liability remains due and owing.

**COUNT I – WITHDRAWAL LIABILITY**
**AGAINST DEFENDANT HURON AVENUE, L.C.**

26. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 25 of this Complaint as though fully set forth herein.

27. As a member of the Port Huron Building Supply Controlled Group, Huron Avenue, L.C. is jointly and severally liable to the Fund for the Withdrawal Liability.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment on behalf of Plaintiffs and against Defendant Huron Avenue, L.C., pursuant to 29 U.S.C. §§ 1132(g)(2) and 1451(b), for:

(i) $2,114,166.93 in withdrawal liability;

(ii) interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged;

(iii) an amount equal to the greater of interest on the unpaid withdrawal liability or liquidated damages of 20% of the unpaid withdrawal liability; and

(iv) attorneys' fees and costs.

(b) Post-judgment interest computed and charged on the entire judgment at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, compounded annually; and

(c) Such further or different relief as this Court may deem proper and just.

Respectfully submitted,

*/s/Andrew J. Herink*
Andrew J. Herink (#6303510)
Central States Law Department
9377 W. Higgins Road
Rosemont, Illinois 60018
Telephone: (847) 939-2458
Fax: (847) 518-9797
Email: aherink@centralstatesfunds.org
ATTORNEY FOR PLAINTIFFS

December 28, 2018